UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LARRY ROE, PERRY O. HOOPER, SR., and JAMES D. MARTIN, Individually and On Behalf of a Class of Persons, | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. _94-0885-AH-S_ |
| | * | |
| MOBILE COUNTY APPOINTING BOARD, HONORABLE LIONEL W. NOONAN, WILCOX COUNTY APPOINTING BOARD, HONORABLE JERRY BOGGAN, As Representatives of Those Persons Who Are Designated by Alabama State Law as The Appointing Boards in Each of Alabama's Counties and Those Persons Who Are Designated by Law to Maintain the Posssession and Security of All Materials Relating to the November 8, 1994 General Election, | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |

### APPLICATION AND COMPLAINT
### FOR TEMPORARY RESTRAINING ORDER

This action seeks to protect the right of citizens of the United States to vote and to have their vote counted properly, and without dilution, through false voting in violation of Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs seek relief against State officials who have authority and control of the counting of votes, and the receipt of absentee ballots in the November 8, 1994 general election. Plaintiffs seek to require these officials to preserve all records related to the election so as to protect against loss of evidence needed to insure the integrity of the vote-counting,

⌐ TO JUDGE  _ATA_

For Ruling or Appropriate Action

Date _11-16-94_  _8_

and voting process, and to preserve records protected by the Civil
Rights Act of 1960, 42 U.S.C. § 1974.

<u>Jurisdictional Allegations</u>

1.   This court has subject matter jurisdiction over this
action pursuant to 28 U.S.C. §§ 1331 and 1343 as this case involves
a question arising under the laws or Constitution of the United
States, and it seeks to redress the deprivation, under color of
state law, of a right secured by the Constitution of the United
States, as well as the Voting Rights Act. Relief is authorized for
the protection of such rights under the All Writs Act, 28 U.S.C. §
1651, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. §
1988.

<u>Venue</u>

2.   Venue is proper in the Southern District of Alabama
pursuant to 28 U.S.C. § 1391 because one of the plaintiffs resides
in Mobile County and because defendants with significant duties
under the election laws of the State of Alabama.

<u>Parties</u>

3.   Plaintiff Larry Roe is an adult resident citizen of
Mobile County, Alabama, and is a registered voter of the State of
Alabama, He is a plaintiff asserting his own rights as well as the
rights of a class of registered voters and citizens of the State of
Alabama.

4.   Plaintiff James D. Martin is an adult resident citizen of
Etowah County, Alabama, and is a registered voter of the State of
Alabama, as well as being a Republican nominee for the office of

Treasurer of the State of Alabama. He is a plaintiff asserting his own rights as well as the rights of a class of registered voters and citizens of the State of Alabama.

5. Plaintiff Perry O. Hooper, Sr. is an adult resident citizen of Montgomery County, Alabama, and is a registered voter of the State of Alabama, as well as being a Republican nominee for the office of Chief Justice of the Alabama Supreme Court. He is a plaintiff asserting his own rights as well as the rights of a class of registered voters and citizens of the State of Alabama.

6. The Defendant, Mobile County Appointing Board is comprised of the Probate Judge, the Circuit Clerk of Mobile County Circuit Court, the Sheriff of Mobile County, and is responsible for administration of elections, including the counting of votes in Mobile County, pursuant to Ala. Code 17-6-1 et seq. (1975). The Board is named as a representative of a class of appointing boards throughout the State.

7. Defendant Lionel W. Noonan is the Probate Judge of Mobile County, Alabama. He is a defendant in his official capacity only, and as a representative of the class of probate judges of the State of Alabama. At all times referred to herein, he is acting under color of state law.

8. The Defendant, Wilcox County Appointing Board is comprised of the Probate Judge, the Circuit Clerk of Wilcox County Circuit Court, the Sheriff of Wilcox County, and is responsible for administration of elections, including the counting of votes in Wilcox County, pursuant to Ala. Code 17-6-1 et seq. (1975). The

Board is named as a representative of a class of appointing boards throughout the State.

9.   Defendant Jerry Boggan is the Probate Judge of Wilcox County, Alabama. He is a defendant in his official capacity only, and as representative of the class of probate judges of the State of Alabama. At all times referred to herein, he is acting under color of state law.

### Statement of Facts

10.   A general election was held in the state of Alabama on Tuesday, November 8, 1994. This election included the office of members of the U. S. House of Representatives.

11.   Among those standing for elections were plaintiffs, James D. Martin and Perry O. Hooper, Sr. Hooper sought the position of Chief Justice of the Supreme Court of Alabama, and Martin sought the position of Treasurer of the State of Alabama.

12.   Based on election returns received by the plaintiffs, there is doubt as to the final outcome of the elections for the offices of Chief Justice of the Alabama Supreme Court and the Treasurer of the State of Alabama.

13.   Plaintiffs claim and contend that these were, and are continuing, widespread and intentional violations of both the laws of the state of Alabama as well as the United States, incident to said election. Said intentional violations of the law were committed by persons acting under color of the law and have caused the outcome of said election to be in doubt. Specific incidents of said intentional violations are described in Exhibit "A".

4

14.   The Circuit Clerk of Wilcox County Appointing Board received applications for ballots for the November 8 election.

15.   The issued absentee ballots to persons seeking to cast absentee votes in Wilcox County.

16.   They received absentee ballots in said election, and further, certified that over 800 absentee votes were received in the election for the Chief Justice position, and over 500 in an election for County Commissioner.

17.   At least 37 of the applicants for absentee ballots listed their Residence Address as a municipality in Clarke County, and not Wilcox County.

18.   The absentee ballot manager for Wilcox County intentionally refused to allow absentee ballots to be challenged in accord with State law, <u>Ala. Code</u> 17-10-10 (1975). <u>See</u> Affidavit of Russ Campbell (Nov. 15, 1994)

19.   The Board certified 725 votes for Hooper's opponent in Wilcox County and 75 votes for Hooper.

20.   According to results certified to the Secretary of State, by appointing Boards throughout the State, Hooper is nine votes behind Hornsby.

21.   The actions of the Wilcox Board and its officials have injured the right to vote of citizens of the State of Alabama, including the Plaintiffs herein, by diluting the strength of their vote and including the absentee ballots of persons who were not allowed by law to vote.

5

22. The preservation of absentee ballots applications, and record relating thereto, including the list of voters used in issuing these applications, is critical to the integrity of the November 8 electoral process, and any contest that may be filed under Alabama law.

23. Plaintiffs have a right to the preservation of all election records pursuant to 42 U.S.C. § 1974.

24. Plaintiffs are contemplating the filing of an election contest under the provisions of § 17-15-1, et seq. of the Code of Alabama, 1975. Under the provision of § 17-15-1, et seq. of the Code of Alabama, 1975, certain election materials must be kept by the appropriate election officials for six (6) months after the election. As detailed in Exhibit "B" attached hereto, there is doubt as to whether the officials responsible under § 17-15-1, et seq. of the Code of Alabama, 1975, will fulfill their obligations under this statute. Additionally, § 17-15-1, et seq. of the Code of Alabama, 1975, makes no provision for the preservation of the more modern technology used in the voting process, such as "computer tapes" and "data packs".

25. The requirements of § 17-15-1, et seq. of the Code of Alabama, 1975, require that plaintiffs contest said election by filing a statement of contest with the Speaker of the House of Representatives for the State of Alabama within 10 days of the proclamation of the results of said election by the Speaker of the House of the State of Alabama which is made at the Legislature's

6

organizational session and which is scheduled to begin on January 10, 1995.

26.   Section 17-15-1, et seq. of the <u>Code of Alabama</u>, 1975 makes no provision for obtaining extraordinary relief and the Alabama Courts may, in fact, be without jurisdiction.

<u>Plaintiff Class Allegations</u>

27.   Plaintiffs bring this action on their own behalf and as representatives on behalf of other persons similarly situated, who are facing or will face in the future a loss of equal voting rights secured by the Fourteenth Amendment because of the action of the Board in failing to secure adequately the records of said election. These actions will injure the right of these voters as a whole to a free and fair election, and to have their votes counted properly and without dilution. This class of persons is so numerous that joinder of all members is impracticable. There are questions of law or fact common to the class. The claims of Plaintiffs are typical of the claims of other members of the class. The Plaintiffs will fairly and adequately protect the interests of the class. Defendants have acted or will act on grounds generally applicable to the class of voters participating in the election on November 8, and therefore, final injunctive or declaratory relief is appropriate with respect to the class as a whole.

<u>Defendant Class Allegations</u>

28.   Defendant Mobile County Appointing Board and Defendant Noonan and Boggan are Probates Judges of Mobile and Wilcox Counties, Alabama, respectively, and are party defendants as

representatives of similarly situated Boards and Probate Judges who are directed by Alabama law to certify election results. This class is so numerous that joinder of all members is impracticable as there are sixty-seven (67) such Boards and sixty-seven (67) Probate Judges. There are questions of law or fact common to the members of the defendant class. The defenses of Noonan and Boggan are typical of the defenses of other members of the defendant class of probate judges. Injunctive relief is appropriate with respect to the class as a whole due to the fact that each of the defendants under State law is a critical participant in the preservation of records needed to determine the true and correct result of the election, and thereby preserve the fundamental fairness and integrity of the electoral process as a whole, throughout the State.

## COUNT ONE

### Application for Temporary Restraining Order

29. Plaintiffs adopt and incorporate by reference paragraphs 1 through 27 hereto.

30. Plaintiffs claim and contend that unless all materials regarding this election are preserved under safe keeping, evidence which will be vital to their election contest may or will be lost.

31. Plaintiffs contend and contend that Unless the defendants are ordered by this Honorable Court to preserve said election materials, plaintiffs will suffer immediate and irreparable harm in that evidence necessary to pursue their election contest may be lost or destroyed.

8

32. Plaintiffs claim and contend that there is no adequate remedy at law.

WHEREFORE, the premises considered, plaintiffs pray for an order requiring said defendants to preserve all materials relating to said election including but not limited to:

(a) Maintain the possession and security of any ballots, ballot boxes, absentee ballots and related affidavits, polling lists, records of challenges, tally sheets, certifications of results, voting machines, data packs, tapes, printouts and all other related election equipment and materials; and

(b) Prevent all persons without authority from having any contact with or access to all ballots, ballot boxes, absentee ballots and related affidavits, polling lists, records of challenges, tally sheets, certifications of results, voting machines, data packs, tapes, printouts and all other related election equipment and materials;

(c) Prevent all persons from taking any action to alter all ballots, ballot boxes, absentee ballots and related affidavits, polling lists, records of challenges, tally sheets, certifications of results, voting machines, data packs, tapes, printouts and all other related election equipment and materials in any way which might change the vote-totals, or alter any evidence relevant an election contest.

Plaintiffs also further pray for reasonable attorneys' fees.

## COUNT TWO

### Petition for Preliminary Injunction

34.   Plaintiffs adopt and incorporate by reference paragraphs 1 through 27 hereto.

35.   Said election contest cannot be filed until January 10, 1995 at the earliest and, therefore, all materials relating to said election must be preserved until that time in order for plaintiffs to preserve their right to contest said election.

36.   Plaintiffs aver that unless an order is issued by this Honorable Court preserving said election materials, said materials may be lost or destroyed prior to any election contest being filed, causing irreparable harm to plaintiffs.

WHEREFORE, the premises considered, plaintiffs pray for an order requiring said defendants to preserve all materials relating to said election until such time as the plaintiffs file an election contest. Plaintiffs also pray further for reasonable attorneys' fees.

## COUNT THREE

### Permanent Injunction

37.   Plaintiffs adopt and incorporate by reference paragraphs 1 through 27 hereto.

38.   Said election contest cannot be filed until January 10, 1995, at the earliest and, therefore, all materials relating to said election must be preserved until that time in order for plaintiffs to preserve their right to contest said elections.

10

39.   Due to the uncertainty as the jurisdiction of the state courts and legislature over said election material until a contest has begun and been completed, there is a need to preserve such election materials as evidence until such materials have been secured adequately for use in any election contest.

WHEREFORE, the premises considered, plaintiffs pray for an order requiring said defendants to preserve all materials relating to said election until such time as a lawful request for said election materials is received by this Honorable Court from the Alabama State Legislature.   Plaintiffs also further pray for reasonable attorneys' fees.

JOHNSTON, WILKINS & DRUHAN
Post Office Box 154
Mobile, Alabama   36601
205/432-0738

BY: _____
JOSEPH S. JOHNSTON
JOHNJ1327

STATE OF ALABAMA :

COUNTY OF MOBILE :

LARRY ROE, being duly sworn, deposes and says:

I am one of the plaintiffs herein. I have read the foregoing complaint and know the contents thereof and the same is true to my knowledge, except as to those matters therein stated on information and belief, and as to those matters I believe it to be true.

_____
LARRY ROE

Subscribed and sworn to before me this 16th day of Nov., 1994.

_____
NOTARY PUBLIC
My Commission Expires: 6-19-96

PLEASE SERVE THE DEFENDANTS:

By Process Server:

HONORABLE LIONEL W. NOONAN,
in his official capacity as
Probate Judge of Mobile County
by and through his attorney,
James C. Wood, Esquire
103 Dauphin Street, Suite 1010
Mobile, Alabama 36602

By Certified Mail:

HONORABLE JERRY BOGGAN
in his official capacity as
Probate Judge of Wilcox County
Post Office Box 668
Camden, Alabama 36726

STATE OF ALABAMA )

COUNTY OF JEFFERSON )

### AFFIDAVIT OF JOHN RUSSELL CAMPBELL

Before me, the undersigned authority, personally appeared John Russell Campbell who, upon being first duly sworn, deposes and says:

1.    The following statements are true and correct to my personal knowledge.

2.    My name is John Russell Campbell.

3.    On November 8, 1994, I served as a poll watcher for the Republican Party in Wilcox County.

4.    I spent the greater part of the day at Beat 3, Box No. 2 located at the Courthouse Annex in Camden, Alabama.

ELECTIONEERING

5.    While there, I witnessed several illegal acts of electioneering by the ADC and the NSC. Representatives from these groups formed a tunnel of people 8-10 deep at the entrance to the Courthouse Annex (and virtually every other polling place in the County) distributing sample ballots instructing voters to vote the straight democratic ticket. The sample ballots were also stacked in the hall and on the counter in Sheriff Prince Arnold's office. The Sheriff's office is directly across the hall (about 3 feet) from the entrance to the room containing the voting machine.

6.    When the ADC and the NSC representatives would run out of sample ballots, they would re-stock in the Sheriff's office.

7.    When I asked the Sheriff to remove the campaign material from his counter and to instruct the ADC and the NSC representatives to observe the 30 feet rule set out in

EXHIBIT "A"

§ 17-7-18, Ala. Code, he told me to "get on outta here" and threatened to arrest me. He also threatened to arrest me if I attempted to take any pictures.

8.     Despite my continued protest, these acts continued throughout the day.

ABSENTEE BALLOT BOX

9.     However, the most flagrant and shocking violation of the election laws arose out of the handling of the county-wide absentee ballot box.

10.    The ballot box was brought into the Courthouse by the Wilcox County Clerk of Courts, Willie Powell, at approximately 12:00 p.m. Mr. Powell took the box into a small conference room, and refused to allow any poll watchers access to the room.

11.    I knocked on the door and was instructed to enter.

12.    Upon entry, I introduced myself and showed Mr. Powell my Poll Watcher Authorization Form entitling me to witness the handling of the absentee ballots.

13.    Mr. Powell immediately went into a tirade. He began yelling and screaming: "Get out of here, you've got no business being in here, I don't care what kind of paper you have." Mr. Powell proceeded to push me and force me out the door. This exchange was witnessed by Ralph Wright (Box 246, Pine Hill, AL 36769) and John Grods (213 Clifton, Camden, AL 36726) who were also attempting to serve as poll watchers.

14.    I walked down the hall and requested Sheriff Arnold to intervene. He instructed Mr. Powell that pursuant to the Alabama Election Laws, I, along with the other poll watchers, should be allowed to witness the handling of the absentee ballots.

15.    Upon gaining access to the room, I introduced myself to the Absentee Ballot Committee and asked them how they were going to proceed.

2

16.     Sandra Henderson spoke for the Committee and advised me that they were simply going to count the number of ballots that had been submitted and remove from the box any ballots which were deficient on the face of the affidavit for lack of signature, etc.

17.     I advised Ms. Henderson that according to § 17-10-10, the election officials were to "call the name of each voter casting an absentee ballot with poll watchers present . . . and . . . open each affidavit envelope, review the affidavit to certify that such voter is entitled to vote and deposit the plain envelope containing the absentee ballot into a sealed ballot box." I also offered to show her the statute.

18.     Ms. Henderson told me that she didn't "have time for any of that." She advised me that they had been "doing this for twelve years" and wasn't about to let me tell her "how to do her job."

19.     Ms. Henderson went on to explain that she had to get back to her "regular job" and that the ballots would not be touched until 6:00 p.m.

20.     I explained to Ms. Henderson that the § 17-10-10 was very clear and insisted that it be followed. She flatly rejected my request.

21.     I immediately left the room and attempted to call Probate Judge Bogan. He was unavailable.

22.     I then attempted to call Circuit Court Judge Jack Meigs. He was also unavailable.

23.     I then went to the third floor of the Courthouse and found Judge Celeste Pettaway. I explained the situation to her and asked for her assistance. She photo-copied

3

§ 17-10-10 and accompanied me back into the room where the Absentee Ballot Committee was meeting.

24.     Judge Pettaway pulled Ms. Henderson aside and, in my presence, asked her to comply with § 17-10-10 and instructed her that "the law is very clear."

25.     After Judge Pettaway left the room, Ms. Henderson once again advised me that "she didn't care what I had to say" and that she was going to handle the ballots the way she had always handled them. I advised her that she had just received a request from a District Judge to comply with § 17-10-10. Ms. Henderson told me that the instructions, having not come from Judge Meigs, didn't mean anything to her.

26.     Despite my continued protest, and that of Messrs. Wright and Grods, the absentee ballots, still enclosed in the affidavit envelopes, were locked in the ballot box and sealed in the Sheriff's vault. The Committee made absolutely no effort to call the names of the voters, remove the affidavit envelopes, make any certification that the voter was entitled to vote nor to deposit only the plain envelopes into the sealed ballot box.

27.     After the locked box was removed, Ms. Henderson explained to me that the envelopes would be opened and counted at 6:00 p.m. She also explained that there was no way that she could begin to separate the affidavit portion of the ballot from the ballot itself because that would reveal the names of voters and how they voted. I explained to Ms. Henderson that there were two envelopes, the outer affidavit envelope and a plain envelope inside protecting the secrecy of the ballot. She stated that there was no such thing in Wilcox County and never had been. She insisted that there was only one envelope.

4

28.     Ms. Henderson went on to explain that an additional reason for delaying the opening of the affidavit envelope until 6:00 p.m. was that she would have to go to the post office to gather any additional ballots that were received after 12:00 p.m. I advised her that the Alabama Code made no provision for absentee ballots being collected after 12:00 p.m.

29.     At 6:00 p.m. we reconvened in the conference room. Judge Bogan, whom had been made aware of the problems we encountered at 12:00 by Judge Pettaway, in my presence, and who we had requested be present for the counting, did not show.

30.     Ms. Henderson had a hostile attitude from the outset.

31.     She opened the box and dumped the over 800 ballots on the table. Several of her assistants began separating the ballots into districts. Included in the box were approximately 5-6 additional ballots that had been either hand delivered or picked up from the post office after 12:00 p.m.

32.     I once again read § 17-10-10 to Ms. Henderson and asked her how the counting was going to proceed. She explained to me, John Grods and Ralph Wright that they were going to do things the way they always had and that since our 12:00 p.m. meeting she had spoken with the Attorney General's Office and had been assured that the way she handled the ballots was proper.

33.     Upon separating the ballots into districts, the several members of the Committee began randomly ripping the affidavit envelope open and separating the ballots.

34.     We immediately interjected and requested that they "call the name of each voter casting an absentee ballot with poll watchers present" and provide the electors of Wilcox County who were present an opportunity to challenge the ballots.

5

35.     Mr. Grods and Mr. Wright had reason to believe that absentee ballots had been submitted on behalf of deceased voters, by voters who were submitting ballots for districts in which they were not registered, and otherwise ineligible voters.

36.     Ms. Henderson exploded into a 10 minute tirade. She ranted and raved and made it very clear that no names would be called, and that "she didn't have time for this."

37.     I attempted to explain to her the necessity for calling out the names and the need to allow the poll watchers to monitor the process and to allow electors of Wilcox County who were present to challenge the absentee ballots.

38.     Despite my requests (over about a thirty minute period of time), the Committee continued to open affidavit envelopes and separate them from the ballots at a feverish pace. Whenever I was able to stop the process of opening the affidavit envelopes at one end of the table, the Committee members at the other end would frantically begin ripping envelopes open and separating the ballots. Incidentally, consistent with Alabama law, but contrary to Ms. Henderson's earlier statement, approximately 90-95% of the absentee ballots did contain an envelope sealing the ballot inside the affidavit envelope.

39.     I explained that once the ballot was separated from the envelope the poll watchers and electors present in the room would not have an opportunity to challenge the ballot, any challenge would be rendered meaningless. I reiterated the concerns of Mr. Grods and Mr. Wright and their right to challenge. I stated that the conduct of the Committee was depriving them of their rights under the election laws and was itself in violation of § 17-10-10. She explained to me that that was "our problem."

6

40. After 75 to 100 of the ballots were ripped open and it was clear that there was going to be no opportunity to challenge ballots and absolutely no attempt to comply with § 17-10-10, Mr. White and Mr. Grods challenged the entire absentee ballot box and counting process citing the Committee's failure to follow the procedures set forth in § 17-10-10 and stated for the record their belief that many of the ballots (particularly the over 600 from District 6) were improper.

41. At this point the process had reached utter chaos. One of the members of the Committee even began comically rattling off random names as fast as she could read them from across the table and said, "you wanted names called out, there you go." Her conduct exemplifies the type of callous disregard for and arrogant violation of Alabama's Election Laws that I witnessed throughout the day.

VOTING MACHINES

42. Hollis Curl, an independent candidate for State Senate, upon voting himself, discovered that the voting machines were not programmed according to Alabama law.

43. The machine would not allow a voter to vote the straight Democratic ticket and then vote individual Republican candidates or Independent candidates.

44. The machine would, however, allow someone who voted the straight Republican ticket to vote for individual Democratic candidates and Independents.

45. Mr. Hollis explained the problem to the programmer from the company responsible for the machines.

7

46.     The company representative explained that voters could vote the straight Democratic ticket and vote for individual Republican or Independent candidates if an additional step were followed.

47.     Thus, it was more complicated to deviate from the straight Democratic ticket than it was the Republican ticket.

48.     He suggested hanging a sign at all of the polling places explaining the procedure. Mr. Curl and I both rejected that suggestion.

49.     When I was asked to serve as a Ballot Security Attorney, I could not believe that the election officials in Wilcox County would be capable of tolerating, much less participating in, the type of activities that were described to me as having occurred in the past. Not only was it as bad as had been described to me, it was worse. I was shocked.

FURTHER AFFIANT SAYETH NOT.

JOHN RUSSELL CAMPBELL

SWORN TO AND SUBSCRIBED before me this the _15th_ day of _November_ , 1994.

Notary Public
My Commission Expires _7/25/97_

8

STATE OF ALABAMA       §
                            §                           **AFFIDAVIT**

COUNTY OF DALLAS      §

### AFFIDAVIT OF E. MURFEE GEWIN

Before me, the undersigned authority, appeared E. Murfee Gewin, who having been sworn, testified and deposed as follows:

At approximately 11:15 a.m. on November 14, 1994, I delivered to the Probate Judge's Office in Perry County, Alabama, a copy of the Order of the Circuit Court of Shelby County in Perry O. Hooper, Sr. and James D. Martin v. Thomas A. Snowdon, Jr., James Jones, Sherrie R. Phillips, Wilbur Mitchell, Roger Powell, William H. Campbell and Prince Arnold, Civil Action No CV-94-719. While there, I spoke with a woman behind the counter and asked her questions concerning the security of materials for the general election of 1994. She pointed to an unsealed cardboard box on the floor inside the Probate Judge's Office, which she said contained the election materials from the 1994 general election in Perry County.

She said the Probate Judge had left town for a seminar in Tuscaloosa on the "Motor-Voter Act." She indicated that in his absence the records had not been sealed and she did not know when and whether they would be sealed until he returned.

Further the affiant saith not.

                                   **E. MURFEE GEWIN**

STATE OF ALABAMA       §
                            §

COUNTY OF DALLAS      §

I, the undersigned, a Notary Public in and for said County, in said State, do hereby certify that **E. MURFEE GEWIN**, an individual whose name is signed to the foregoing Affidavit, and who is known to me, acknowledged before me on this day, that, being informed of the contents of said Affidavit, he executed the same voluntarily on the day the same bears date.

Given under my hand and official seal, this the __14th__ day of November, 1994.

                                   **NOTARY PUBLIC**, State at Large

                                   Commission Expires: __8/10/97__

EXHIBIT "B"

CERTIFICATE

UNITED STATES OF AMERICA


I, Deborah S. Hunt, Clerk of the United States District Court for the Southern District of Alabama, do hereby certify that the foregoing original documents and a certified copy of the docket entries, being the true and correct proceedings had in said Court in the case of        LARRY ROE, ET AL                        versus MOBILE CNTY APPT. BOARD, ET AL      CASE NO.  94-0885-AH-C      , as fully as the same appear of record in my office as such Clerk.

IN WITNESS THEREOF, I have hereunto set my hand and caused to be affixed the seal of the United States District Court for the Southern District of Alabama, at Mobile, Alabama, this the  13th  day of    December          , 19  94  .


                              DEBORAH S. HUNT, CLERK
                              UNITED STATES DISTRICT COURT,
                              SOUTHERN DISTRICT OF ALABAMA

                         By:  _____
                              Operations Manager